SIMMONS v. SIMMONS.

Civil Action No. 615.

District Court, E. D. South Carolina,
at Charleston.

Nov. 6, 1941.

546

W. Brantley Harvey, of Beaufort, S. C., for plaintiff.

Randolph Murdaugh, of Hampton, S. C., for defendant.

BARKSDALE, District Judge.

This suit was instituted in a state court of South Carolina on or about July 21, 1941. At that time the plaintiff, H. Wendell Simmons, and the defendant, Louisa S. Simmons, were husband and wife. The complaint alleges: That plaintiff and defendant were married in 1932, and lived as husband and wife in Beaufort County, S. C., from that time until December, 1940; that on or about December 30, 1940, the defendant, without plaintiff's knowledge, forcibly took their infant son, aged four years, beyond the borders of South Carolina, and continues to forcibly detain him in the State of Florida; that such taking was malicious, wilful and unlawful, and with the intent of keeping him away from his father, who had equal power, rights and duties of and to the said infant son; and that by reason of the said malicious, wilful and wanton forcible taking of the said infant, Herbert Mason Simmons, by

the said defendant, this plaintiff has been unlawfully deprived of the care and custody of said child, has suffered great mental anguish, has been put to unusual expense in trying to see said infant son and regain his custody, and may be permanently deprived of the love, affection and company of his said son, all to his loss and damage in the sum of $50,000. Thereafter, this cause was duly removed to this court upon the petition of defendant.

It further appears that by decree of August 21, 1941, of the Circuit Court for Volusia County, Florida, the defendant here, Louisa S. Simmons, procured an absolute divorce from the said H. Wendell Simmons, he having personally appeared and submitted to the jurisdiction of that court, and that by the same decree that court awarded the sole custody and control of the infant son to the said Louisa S. Simmons and enjoined the said H. Wendell Simmons from interfering with her custody of said minor child.

Thus it appears that at the time the wife took the child out of the State of South Carolina, and at the time of the institution of this suit, the custody of the child had not been awarded to either parent, and that when the right to the custody of the child was determined, such custody was awarded to the wife, the defendant in the suit now under consideration.

Service of process on the defendant in this suit was had by means of an attachment, which defendant contends to be void by reason of the fact that she alleges that she was not the owner of the property attached.

The case is before me upon defendant's motion to dismiss upon either or both of two grounds, which may be stated generally: (1) That plaintiff has no cause of action, and (2) that this court has no jurisdiction over the defendant, as the process upon her was based upon a void attachment.

As the jurisdiction of this Court is based upon diversity of citizenship, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the law of South Carolina governs.

Plaintiff's counsel admits that he has been unable to find any case decided by the highest court, or any other court, of South Carolina, or of any other state, wherein any court held that the state of facts here al-

leged constitutes a cause of action. The South Carolina statute governing the custody of children is as follows: Section 8638, Volume III, Code of Laws of South Carolina 1932: "Mother and Father to Have Equal Rights in Custody, Etc., of Minor Children.—The wife and husband are the joint natural guardians of their minor children and are equally charged with their welfare and education, and the care and management of their estates; and the wife and husband shall have equal power, rights and duties, and neither parent has any right paramount to the right of the other concerning the custody of the minor or the control of the services or the earnings of such minor or any other matter affecting the minor. *Neither parent shall forcibly take a child from the guardianship of the parent legally entitled to its custody.* The welfare of the minor shall be the first consideration and the court having jurisdiction shall determine all questions concerning the guardianship of the minor. Nothing herein contained shall be construed to relieve the father of his common law obligation to support his children, nor shall it be construed to increase the liability of the mother to support the children". (Italicizing mine.)

Plaintiff relies upon the italicized sentence and the construction placed upon it in the case of Graydon v. Graydon, 150 S.C. 117, 147 S.E. 749, 750. This was a habeas corpus case brought by a mother to determine the right to the custody of an infant child then in the custody of her father. The court, upon the evidence, proceeded to determine the rights of the respective parents to the custody of their child, adopting the well known principle that *"the welfare of the child* shall be the prime consideration of the court." However, as a dictum, entirely obiter, the court said: "The evidence satisfies me that, unquestionably the plaintiff took the child away from the father into another state with the intention of keeping it away, and this without the father's knowledge or consent. This it seems to me, was a clear violation of the provisions of section 1 of the Act of 1923 (33 St. at Large, p. 42), which are to the effect that the husband and wife shall have equal rights, duties, and powers as to the child, and neither has any right paramount to the other as to the custody of such child. The taking of such child away from the state without the knowledge or consent of the father, with the intention of keeping it out of the state, is to be construed as a 'forcible' taking—the terms employed in the statute."

Plaintiff contends that inasmuch as the defendant in this case violated the statute as construed by the dictum just quoted, this creates a cause of action for money damages in favor of the plaintiff against the defendant. With this contention I am unable to agree. In the first place, this dictum is not binding upon this court. New England Mutual Life Insurance Co. v. Mitchell, 4 Cir., 118 F.2d 414, certiorari denied, October 13, 1941, 62 S.Ct. 60, 86 L.Ed. ——. But even if it were binding, this dictum falls very short of saying that the complaint in this action states a cause of action.

As to this phase, this is a case of novel impression, and it is regrettable that it arises in a Federal court rather than in a court of the State of South Carolina. It is conceded by counsel for both sides that so far as their knowledge goes, this question has not been passed upon by any South Carolina court, but it does not seem to me that it could ever be said that a state has no law upon any given question merely because the precise question has not yet been passed on by any court. It seems to me to be the duty of the court in which the novel question arises to pass upon the question in the light of the pertinent statute law and analogous decisions, if any, together with the decisions of other states and the court's own idea of reason and principle and public policy.

The South Carolina statute above quoted provides that: " * * * the wife and husband shall have equal power, rights and duties, and neither parent has any right paramount to the right of the other concerning the custody of the minor * * *." Thus, neither parent, in the absence of judicial determination, has any absolute right to the custody of a child. At the time of the institution of this suit, there had been no judicial determination that one parent was entitled to the custody of this child to the exclusion of the other, nor is there any question presented of one parent depriving the other of the earnings or services of the child.

In the case of Louisiana v. Elliott, 171 La. 306, 131 So. 28, 77 A.L.R. 314, it is held that where the father and mother are equally entitled to the possession of a child, the father does not commit the crime of kidnapping by taking possession of the child, no matter how reprehensible his

actions may be. In the annotation following this case (77 A.L.R. p. 317), it is stated that: "In the absence of an order or decree affecting the custody of a child it is generally held that a parent, or one assisting such parent, does not commit the crime of kidnapping by taking exclusive possession of the child", citing numerous cases from various states, not, however, including South Carolina.

In the case of Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937, Mr. Justice Cardozo, speaking for the New York Court of Appeals, held that, in the absence of statute, one parent cannot maintain an action against the other to determine the custody of their child. He held that in the absence of statute, besides the remedy of habeas corpus, the only way to determine the right to the custody of a child was by petition to the Chancellor, or to the court that has succeeded to the Chancellor's prerogative, and, referring to such a petition he said (240 N.Y. 429, 148 N.E. at page 626, 40 A.L.R. at page 940): "We find no sufficient reason for discarding this historic remedy and establishing in its place or even as a supplement, a remedy of action. The difference is more than formal. The chancellor in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against any one. He acts as parens patriæ to do what is best for the interest of the child. He is to put himself in the position of a 'wise, affectionate, and careful parent' (Reg. v. Gyngall, supra), and make provision for the child accordingly. He may act at the intervention or on the motion of a kinsman, if so the petition comes before him, but equally he may act at the instance of any one else. He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights 'as between a parent and a child,' or as between one parent and another. Reg. v. Gyngall, supra. He 'interferes for the protection of infants, qua infants, by virtue of the prerogative which belongs to the Crown as parens patriæ.' Re Spence 2 Phill.Ch. 247, 41 Eng.Reprint, 937. The plaintiff makes no pretense of invoking this paternal jurisdiction. We are not advised by his complaint whether a division of the custody will tend to the benefit of his sons or to their detriment. He invokes the jurisdiction of a court to settle a dispute.

Equity does not concern itself with such disputes in their relation to the disputants. Its concern is for the child."

And it seems to me that such an action as this is directly contrary to the public policy of the State of South Carolina, in two particulars:

The promotion of domestic felicity between husband and wife is certainly a part of the public policy of South Carolina. Indeed, it is the only state in the nation which does not legally recognize that there can be any rift in such domestic felicity sufficiently serious to justify a dissolution of the marriage relationship. To sanction suits by one spouse against another for money damages based upon the deprivation by one consort of the custody of a child from the other, would certainly be highly conducive to domestic infelicity.

And it seems to me that even more important is that principle of public policy that the welfare of the child is the prime consideration in any controversy affecting the custody of a child. Controversies such as this most assuredly do not promote the welfare of the child. To treat an infant child as an article of property, the enjoyment of the possession of which is to be given a monetary valuation, cannot be conducive to its welfare. In my opinion, any possible effect which suits of this kind may have upon children must of necessity be deleterious.

It is true that in South Carolina, by statute, a married woman may sue and be sued as if she were unmarried. Section 400, Code of Laws of South Carolina 1932. And this section further provides that: "When the action is between herself and her husband, she may likewise sue or be sued alone."

In the case of Prosser v. Prosser, 114 S.C. 45, 102 S.E. 787, it was held that a wife might maintain an action against her husband for a personal tort. However, besides this freedom of action thus established, a husband or wife seeking to maintain a tort action against the other must also show the possession of a right of action against the defendant, and in the case under consideration, the plaintiff, in my opinion, has failed to do so.

I am of the opinion also that this suit should be dismissed upon the other ground. Defendant owned a large tract of land with timber on it. She conveyed certain timber

rights to one Schultz, by deed dated August 21, 1940, and duly recorded. Thereafter, by deed dated January 16, 1941, defendant conveyed all of the said real estate to another, together with miscellaneous personal property thereon, and the deed included in the grant the following language: "Also, all household goods and fixtures now located in the dwelling houses located on the above described property, and all other personal property owned by me of whatever kind or nature. Together with, all and singular, the rights, members, hereditaments, appurtenances the said premises belonging, or in any wise incident or appertaining."

The property attached in the attachment which is the basis of the service of process on defendant in this case was certain money in the hands of Schultz arising from his cutting of timber under his timber deed. The attachment levy was made on or about July 21, 1941. It also appears that by letter delivered to Schultz on February 13, 1941, by registered mail, defendant notified Schultz that all monies due her by virtue of the timber deed should be paid to the husband of grantee in the deed conveying the real estate.

Plaintiff contends that the right to the money which Schultz was obligated to pay under the terms of the timber deed did not pass to the grantee in the deed of conveyance of the real estate, and relies on the case of Richardson v. Cooler, 115 S.C. 102, 104 S.E. 305. It is true that, construing the instrument of conveyance there under consideration, the court held that the subsequent conveyances of the real estate did not include the proceeds of the sale of timber rights by a previous conveyance. However, I think the grant in the instant case is more comprehensive, and was intended to, and did, convey all of the personal property, rights and appurtenances, appertaining to the real estate conveyed, including the rights accruing under the timber deed.

It is my duty here to pass upon the validity of the attachment, and if the attachment is void, the suit fails. La Varre v. International Paper Co., D.C., 37 F.2d 141, 143.

For the reasons stated, I am of the opinion that this suit must fail for lack of jurisdiction of the defendant, even if a cause of action was stated.

An order will be entered dismissing this action at the plaintiff's costs.